VANDENHEUVEL *v.* THE UNITED INSURANCE COMPANY, 2 C. C. E. 217; 2 J. C. 127, 541.

*Sentence of a Foreign Court of Admiralty.*

In error on a judgment of the Supreme Court, in an action on a policy of insurance on the *freight* of " the good *American* ship called the Astrea, at and from New York to Corunna," the freight valued at $10,000, at a premium of fifteen per cent.

At the trial in the court below, the jury brought in a special verdict, stating among other things,

" That the policy was underwritten by the defendants in error, in consequence of a written application made to them by the plaintiff in error, in the words and figures following, to wit:

" New York, 14 Nov. 1798.

" Gentlemen, what will be the premium on the ship, freight, and cargo, of the Astrea, Captain Price, consisting in *mahogany, tobacco, staves, dye wood, and sugar,* at and from New York to Corunna, to sail in eight days, property of the undersigned.

J. C. VANDENHEUVEL."

That the ship in the course of her voyage, was captured by a British frigate, and carried into Gibraltar, where she, with her cargo, was libelled in the Court of Vice Admiralty, and condemned as lawful prize to the captors, " as belonging

at the time of her capture to Spain, or to persons being subjects of the King of Spain, or inhabiting within the territories of the King of Spain, enemies of Great Britain." That the freight, by reason of this capture and condemnation, was totally lost to the plaintiffs in error, who duly abandoned the same to the defendants in error, exhibiting to them at the same time, due proof of loss and interest; that the freight was really the property of the plaintiff in error, and the ship and cargo were also his property, unless in judgment of law the plaintiff in error is concluded by the said sentence of condemnation; that the ship, at the time of capture was registered as an American vessel, and had all the papers which an American vessel usually has; that the plaintiff in error was born a subject of the United Netherlands, and continued such until the third of June, 1793, when he became a naturalized citizen of the United States according to law; and the defendants in error, at the time of subscribing the said policy of insurance, well knew that the plaintiff in error was born a Dutchman; that the sum due to the plaintiff in error, supposing him to be by law entitled to recover for a total loss, is $4,365, and the sum due to the plaintiff in error, for return of premium, supposing him to be by law entitled to recover no more than a return of premium, is $700. After stating these facts, the verdict submitted the following questions to the decision of the court.

1. Whether the plaintiff is by law entitled to recover the said sum, $4,365, being the amount of a total loss?

2. If the plaintiff in error is not by law entitled to recover for a total loss, whether he is by law entitled to recover the $700, being the amount of return of premium?

3. If the plaintiff is not by law entitled to recover a return of premium, whether he is by law entitled to recover any sum whatever?

On this special verdict, the Supreme Court, after argument, decided that the plaintiff was not entitled to recover as for a total loss, on the said policy of assurance, but that he was entitled to a return of premium, for which they gave judgment.

Benson, Kent and Radcliff, Js., delivered opinions, each holding, upon the strength of the previous decisions of their

own court, as well as upon the English cases, that the sentence of the Court of Admiralty was conclusive upon the insured, and that he could not recover beyond a return of premium.   See 2 C. C. E. 219–266.

The plaintiff then brought his writ of error to the Court of Errors, where this question underwent elaborate argument, and the principle was finally established by the Court of dernier resort, that the sentence of a foreign Court of Admiralty, was not conclusive, but *prima facie* evidence only of the character of the property insured, although expressly condemned as enemy's property.

Clinton, (De Witt,) senator, and T. R. Gold, senator, delivered the only opinions, and arrived at the same conclusions.   Senator Clinton says: "The plaintiff having warranted a ship and cargo as American property, the question is, whether in an action against the insurers, the sentence of a foreign Court of Admiralty, that such warranty was false, is conclusive evidence.   It is admitted by the plaintiff, that the sentence binds and changes the property, and that it is *prima facie* evidence of the fact set up against him ; and, on the other hand, it is conceded by the defendants, that in several cases, in an action of this kind, the judgment is not definitive in favor of the insurers ; such as when, on the face of it, it is founded on local ordinances, or contrary to the law of nations; or so ambiguous that the court can not, from the reasons assigned, collect the grounds of it ; and that this case not coming within either of these descriptions, the contest between the parties still remains open, whether the foreign sentence be *prima facie* or conclusive evidence against the insured, and whether it bind the property adjudicated only, or is conclusive to every extent, and in every modification of the subject."

He proceeds to examine the English cases, and maintains that *Hughes* v. *Cornelius*, 2 Shower, which was an action of *trover* for a ship sold under a decree of a French Admiralty Court, (in which the court admitted the sentence to be true, although contrary to the special verdict,) went only upon the ground of the decree's *changing the property*. "The idea that a sentence of a Court of Admiralty is conclusive, arises from this consideration ; that the court always proceeds *in rem.*   The

32

decree naturally and necessarily binds the subject of the proceeding. A ship or cargo, or any person purchasing under the decree, will of course be secure. The case of *Fernandes* v. *Da Costa*, he treats as one of no authority on the point, being a *nisi prius* case, and that all we can collect from it is, that the testimony adduced by the plaintiff, was not sufficient to balance that derived from adjudication." "In suits brought in England, upon foreign judgments, between the same parties, the courts consider them only as *prima facie* evidence of the demand, and admit the defendant on a plea of *nil debet*, to contest the original cause of action. If a foreign judgment be not considered conclusive between the same parties in cases of this nature, why of a foreign Court of Admiralty between third persons?"

Such being the opinion of a majority of the court, the judgment of the Supreme Court was *reversed* accordingly; and the cases of *Ludlow* v. *Dale*, 1 J. C. 16; *Goix* v. *Low*, 1 J. C. 341, were also overruled by this decision.

---

☞ Notwithstanding the different decisions, as to the conclusiveness of the sentence of a foreign Court of Admiralty, in cases where the condemnation was *for breach of blockade*, as in *Croudson* v. *Leonard*, 4 Cranch, 434, and others in S. Ct. of U. S., yet in the case of the *Ocean Insurance Company* v. *Francis*, 2 Wend. 64, the Court of Errors held it settled law in our state, that the "sentence of a foreign Court of Admiralty, condemning a vessel warranted not to be employed in an *illicit trade*, was not enough to support the allegation of a *breach of warranty*; that, such foreign court acting as a municipal court to carry into effect the *navigation laws* of such foreign state, and condemning the vessel for a violation of them; to establish such a breach of the warranty, it was incumbent on the insurers to prove the existence of the laws alleged to be violated, as our courts can not judicially take notice of the *municipal* laws of other countries, but require them to be found as facts."